UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SUNDRA FRANKS,

              Plaintiff,

      - against -

CITY OF NEW YORK AND NEW YORK CITY
POLICE OFFICER RICHARD DINKLE, Shield
#28075,

              Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
13-CV-3056 (RRM) (MDG)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Sundra Franks brings this action pursuant to 42 U.S.C. § 1983 alleging false arrest, malicious prosecution, and a variety of pendant state law claims against Police Officer Richard Dinkle and the City of New York. (Compl. (Doc. No. 1).) Defendants' motion for summary judgment is before the Court. For the reasons that follow, defendants' motion for summary judgment is GRANTED in its entirety.

## BACKGROUND

The following facts are undisputed, except where noted, and are taken from the parties' Rule 56.1 statements. (Defs.' Rule 56.1 Statement (Doc. No. 20-1); Pl.'s Rule 56.1 Statement (Doc. No. 22 at 4)).[1]

---

[1] Defendants ask the Court to deem their 56.1 statement undisputed because Franks's 56.1 statement does not respond directly to the enumerated paragraphs in defendants' corresponding statement or include citations to many of the facts asserted, as required by the Court's local rules, and because many of the paragraphs merely state inappropriate legal conclusions. (Defs.' Reply Mem. at 2–3.) The Court agrees that in these respects, Franks's 56.1 statement is deficient. A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Rateau v. City of New York*, No. 06–CV–4751 (KAM) (CLP), 2009 WL 3148765, at *1 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed). However, even considering those factual assertions which are properly supported in Franks's statement or accompanying exhibits does not alter the Court's disposition of this matter.

On July 9, 2012, Dinkle and other members of the New York City Police Department responded to 234 Benziger Avenue in Staten Island after receiving a report of a shooting at that location. (Defs.' Rule 56.1 Statement at ¶ 1.) The victim, a friend of Franks named M.R., was taken to Richmond University Medical Center, treated for two gunshot wounds to the abdomen and survived. (*Id.* at ¶¶ 2–3.) At the hospital, M.R. told police he had been at a barbeque drinking and playing dominoes when he heard gunshots and then felt pain. (*Id.* at ¶ 4.) M.R. also told the officers that that he did not know who fired the shots, but that he saw a black vehicle driving away from the scene. (*Id.* at ¶ 5.)

At the scene of the shooting, H.R., an eyewitness and resident of 234 Benziger Avenue, told Dinkle that before the shooting he was at a barbecue next to his house and got into an argument with someone he knew as "Dre." (*Id.* at ¶ 8.) He told Dinkle that Dre lived on the same block, spoke with a stutter, and was friends with M.R. (*Id.* at ¶ 9.) According to H.R., during the argument, Dre had threatened to shoot him, and then walked up the block, met with a woman who appeared to hand him something, and returned. (*Id.* at ¶ 10.) H.R. said that as Dre approached, he observed a gun and saw Dre fire towards him. (*Id.* at ¶ 11.)

During his conversation with H.R., Dinkle suspected that Dre was in fact Franks, with whom he was familiar with from a previous investigation and arrest. (*Id.* at ¶¶ 12, 13.) Later that day, H.R. identified Franks as the gunman and the person he knew as Dre from a photo array that Dinkle had prepared. (*Id.* at ¶ 19.) H.R. believed that Franks had shot at him, but struck "his homeboy instead." (*Id.* at ¶ 20.) Based on this identification, Dinkle issued an investigation card ("I-card") for Sundra Franks. (*Id.* at ¶ 21.)

The next day, Dinkle interviewed H.R.'s wife, G.R. (*Id.* at ¶ 22.) She told Dinkle that she was in her backyard when she heard H.R. yelling and arguing with someone on the other side

of the house.  (*Id.* at ¶ 23.)  G.R. stated that she then went to the front of the house and saw an individual she knew as "Andre" shoot a gun from across the street towards her house and then run up the block with an unknown female.  (*Id.* at ¶¶ 24, 25.)  G.R. told Dinkle that she then saw M.R. lying on the ground clutching his stomach, and that when she knelt down next to him he told her "do not tell."  (*Id.* at ¶ 26.)  G.R. then viewed the photo array prepared by Dinkle, and also identified Franks as the person she saw fire the gun.  (*Id.* at ¶¶ 27–28.)

Prior to the shooting, Franks, who lives on the same block, was at a barbecue at 232 Benziger Avenue.  (*Id*. at ¶¶ 7, 15–16.)

On July 18, 2012, Franks was taken into custody on an unrelated criminal case, and then brought to the 120th precinct where Dinkle arrested him on charges of attempted murder, criminal use of a firearm, reckless endangerment, and multiple charges of assault and criminal possession of a weapon.  (*Id.* at ¶¶ 30–33; NYPD Omniform System Arrest Report (Doc. No. 21-2) at 1.)  Franks was arraigned the following day.  (Defs.' Rule 56.1 Statement at ¶ 34.)  He did not make bail and was remanded to into the custody of the New York City Department of Correction.  (*Id.* at ¶¶ 35, 36.)  H.R. and G.R. failed to appear before the grand jury, and on July 24, 2012, Franks was released on his own recognizance.  (*Id.* at ¶ 37–38.)  On January 28, 2013, the District Attorney's office dropped all charges against Franks.  (*Id.* at ¶ 39.)

On May 24, 2013, Franks filed the instant action.  On January 12, 2015, defendants moved for summary judgment.

**STANDARD OF REVIEW**

3

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

DISCUSSION

I. False Arrest

A claim for false arrest under § 1983 is based on one's Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause. It is substantially the same as a false arrest claim under New York state law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995)). "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).

To prevail on his claim for false arrest, Franks must show that Dinkle "intentionally confined him without his consent and without justification." *Weyant*, 101 F.3d at 852 (citations omitted). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983. *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) and citing *Broughton v. State*, 335 N.E.2d 310, 315 (N.Y. 1975)). In other words, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant*, 101 F.3d at 852).

Even without probable cause, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Id.* "Arguable probable cause exists 'if either (a) it was objectively reasonable for the

officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." *Escalera*, 361 F.3d at 743.

Here, two eyewitnesses who both knew Franks identified him as the shooter from a photographic array. One of the witnesses claimed to have argued with Franks just prior to the shooting and to have been his intended target. The other claimed to have observed Franks shooting towards her husband and son. Even where the eyewitnesses do not know a suspect beforehand, "[a] positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest." *Celestin v. City of New York*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008). These eyewitness identifications establish probable cause, as a person of reasonable caution would believe that Franks likely committed a crime under the circumstances described.

Although Franks does not state so directly, the essence of his argument is that Dinkle lacked probable cause because neither H.R. nor G.R. saw the bullets strike M.R. and because the shooting victim claimed that someone else had shot him. (*See* Pl.'s Rule 56.1 Statement at ¶ 4 (noting that M.R. and Franks claim they saw a black vehicle flee the scene of the shooting), ¶¶ 6–8 (describing H.R. running inside his residence to retrieve a machete after allegedly having been shot at by Franks), ¶¶ 11–14 (describing G.R. as alleging only to have seen Franks "shooting at her husband and son"); Mem. Opp'n Summ. J. (Doc. No. 22) at 7–8 ("[A] reasonable officer in . . . Dinkle's position could have realized it was impossible for H.R. to be able to identify [Franks] as the shooter since he fled the location and did not have an opportunity to observe the individual who shot [M.R.] . . . it was only when he came back outside that he

realized [M.R.] had been shot.").) While gaps in the continuity of observation and alternative theories of how M.R. was shot might ultimately create some doubt as to whether Franks was responsible for M.R.'s injuries, these facts do not render Dinkle's belief that Franks had committed a crime based on H.R. and G.R.'s identifications "unreasonable." As a matter of law, therefore, Dinkle had probable cause to arrest Franks and thus summary judgment is appropriate. Furthermore, even if probable cause was arguable under these circumtances, Dinkle would be entitled to summary judgment on grounds of qualified immunity.[2]

## II. Malicious Prosecution

To prevail on his claim of malicious prosecution, Franks must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). Franks has failed to adduce any evidence to support three of these four elements.

First, Dinkle did not initiate or continue a criminal proceeding against Franks. Under New York law, a prosecutor is presumed to have exercised his own independent judgment in deciding to prosecute a criminal defendant. *Takacs v. City of New York*, No. 09-CV-481 (LBS), 2011 WL 8771384, at *4 (S.D.N.Y. Jan. 24, 2011). This presumption can be overcome by a showing that a police officer has "create[d] false information likely to influence a jury's decision and forwards that information to prosecutors." *Brome v. City of New York*, No. 02-CV-7184 (WHP), 2004 WL 502645, at *5 (S.D.N.Y. Mar. 15, 2004) (quoting *Ricciuti v. N.Y.C. Transit*

---

[2] Although Franks's 56.1 statement makes no reference to the manner in which the photo array that produced G.R.'s identification was conducted, his memorandum opposing summary judgment argues that it "may" have been suggestive because Dinkle did not "reshuffle the photos" from H.R.'s identification a day earlier. (Mem. Opp'n Summ. J. at 8.) Even accepting Franks's argument, its equivocal nature underscores that, at worst, failure to reshuffle the photographs might have rendered probable cause "arguable."

7

*Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Franks has not set forth any evidence suggesting such misconduct by Dinkle.  Second, as discussed above, Dinkle had, at minimum, arguable probable cause to arrest Franks.  Finally, Franks has not set forth any evidence of actual malice by Dinkle towards Franks.  Franks's failure to make a showing as to any of these elements would, independently, be sufficient to warrant summary judgment for Dinkle.

**III.    Additional Claims**

Franks has abandoned the additional claims in his complaint.  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).  Defendants moved for summary judgment on all of Franks's claims, including excessive force, equal protection, municipal liability, and the various state law claims alleged in his complaint.  In his reply papers, Franks failed to even address defendants' arguments, let alone offer any evidence from which a reasonable jury could return a verdict in his favor on these claims.  Summary judgment is therefore appropriate with respect to all of Franks's remaining claims against both Dinkle and the City of New York.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (Doc. No. 20) is GRANTED in its entirety.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      August 10, 2015  _____
ROSLYNN R. MAUSKOPF
United States District Judge